IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, ) <br> ) <br> and ) <br> ) <br> HELLS CANYON PRESERVATION ) <br> COUNCIL, an Oregon non-profit ) <br> Corporation, and THE WILDNERNESS ) <br> SOCIETY, a national and non-profit ) <br> Corporation, ) <br> ) <br>       Co-Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> U.S. FOREST SERVICE, ) <br> ) <br>       Defendant. ) <br> _____) <br> ) <br> SHIRTS BROTHERS SHEEP, ) <br> ) <br>       Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> SECRETARY OF THE U.S. ) <br> DEPARTMENT OF AGRICULTURE; ) <br> CHIEF OF THE FOREST SERVICE; ) <br> REGIONAL FORESTER FOR THE ) <br> INTERMOUNTAIN REGION OF THE ) <br> FOREST SERVICE; FOREST ) <br> SUPERVISOR OF THE PAYETTE ) <br> NATIONAL FOREST OF THE FOREST ) | Case No. CV-07-151-E-BLW <br> (Lead Case) <br><br> **MEMORANDUM** <br> **DECISION AND ORDER** <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case No. CV-07-241-E-BLW |

**Memorandum Decision and Order – Page 1**

| | |
|---|---|
| SERVICE; DISTRICT RANGER FOR | ) |
| THE COUNCIL RANGER DISTRICT | ) |
| OF THE FOREST SERVICE, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## INTRODUCTION

The Court has before it a motion for TRO and/or preliminary injunction filed by plaintiff Shirts Brothers Sheep. The Court heard oral argument on June 13, 2007, and took the motion under advisement. For the reasons discussed below, the Court will deny the motion.

## ANALYSIS

Shirts Brothers has a Forest Service permit to graze three bands of sheep – totaling about 1,880 ewes with young lambs – on the Sheep Mountain allotment. The permit allows turn-out on June 18, 2007.

On April 5, 2007, the District Ranger issued a decision prohibiting Shirts Brothers from grazing sheep on two subunits of the Smith Mountain allotment. On May 7, 2007, the District Ranger went further and prohibited any grazing on that portion of the allotment lying within the Hells Canyon National Recreation Area (HCNRA), and also prohibited grazing within six subunits of the allotment.

On May 21, 2007, the Forest Supervisor denied a request by Shirts Brothers for an administrative stay of the District Ranger's decision. Shirts Brothers

**Memorandum Decision and Order – Page 2**

appealed this decision to the Regional Forester. On May 24, 2007, the Regional Forester decided not to exercise discretionary review of the decision by the Forest Supervisor and constituted the Forest Service's final decision on the stay request. The appeal on the substantive issues remains pending before the Forest Supervisor and the Court has not been notified that it has been resolved.

The Forest Service argues that this Court has no jurisdiction even to hear the appeal of the stay denial. The Court disagrees. The turn-out date is just five days from today, and there is no indication as to when the Forest Supervisor will render a final decision on the merits of the appeal. These circumstances warrant a finding that this Court has jurisdiction over the appeal of the stay denial.

A moving party is entitled to injunctive relief if it demonstrates that it is likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor. *See Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 913 (9th Cir. 1995). The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases. *Id.* "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985).

**Memorandum Decision and Order – Page 3**

The Forest Service based its grazing prohibition – and its stay denial – on the ground that domestic sheep transmit fatal disease to bighorns. In 2005, the Reviewing Officer for the Chief of the Forest Service found that "the viability of bighorn sheep populations within the Hells Canyon area, and across the Payette [National Forest], appears to be threatened by allowing continued grazing of domestic sheep in or near occupied bighorn sheep habitat . . . . Transmission of disease to bighorn sheep on the Payette [National Forest] that are part of the Hells Canyon population will place the entire Payette [National Forest] population at substantial risk." *See Decision For Appeal* at p. 14. That decision directed the Regional Forester to "do an analysis of bighorn sheep viability" in the Payette National Forest and to "amend the SW Idaho Ecogroup FEIS accordingly." *Id*. at p. 15.

In response, the Forest Service prepared a Risk Analysis that was completed on February 6, 2006. That report assesses the risk levels of sheep-grazing allotments. It rates sheep grazing on the Smith Mountain allotment as posing a "very high risk" for disease transmission because the allotment is so close to bighorn populations. Radio-collared bighorns were detected within the Smith Mountain allotment on 319 occasions between 1997 and 2004. *Id*. at p. 12.

Shirts Brothers points out that within the last three years, no radio-collared

**Memorandum Decision and Order – Page 4**

bighorns were detected in the Smith Mountain allotment.  However, this argument is weakened by three factors: (1) only 5% of the bighorn herd was collared, (2) a "significant number" of those have died, and (3) the data is only collected every two weeks, weather permitting.  *See Decision of Forest Supervisor* at p. 2; *Third Declaration of Coggins* at p. 2.

This means that collar data must be supplemented with visual sightings to get a more accurate analysis of where bighorns are located.  The Forest Service identified field sightings, and relied on those in denying the stay. *See Exhibit 14 Deciding Officer Responsive Statement* at pp. 6-7, 16-18.  This spring, Forest Service employees detected bighorns and signs of bighorn within the allotment. *See Decision of Forest Supervisor* at p. 2.

In addition, Victor Coggins has discussed field sightings.  He is the District Wildlife Biologist for the Oregon Department of Fish and Wildlife, and has worked there for 40 years.  *See Coggins' First Declaration* at p. 1.  Over the past 35 years he has supervised the reintroduction and preservation of bighorns in this area.  *Id*.  He testified that as of May 31, 2007 – just two weeks ago – eight ewes and two lambs were sighted nears Hells Canyon Dam "almost directly across from the Smith Mountain allotment on the Oregon side." *See Coggins' Declaration* at p. 3.  He further states that "these bighorns could travel to the allotment in a matter of

**Memorandum Decision and Order – Page 5**

hours, including the time it takes to swim the reservoir or cross the dam." *Id.*[1]

Because the Smith Mountain allotment is "very high quality bighorn sheep habitat," Coggins has "little doubt that some animals from the Upper Hells Canyon herd will move onto the Smith Mountain allotment this year." *Id.*

Shirts Brothers argues that the Court should not consider Coggins' Declaration because it was not part of the record before the Forest Service when it denied the stay. But the Forest Service stated that it relied heavily on field sightings because collar data was inconclusive. Coggins updates that very field data that the Forest Service found so crucial. If, for example, all the bighorns suddenly migrated today into the allotment, ignoring that fact would be absurd. The law does not work absurdities, and does not do so here. The Ninth Circuit has allowed the Court to go outside the administrative record when evidence of a "serious environmental consequence" was not considered by the agency. *See Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988), amended, 867 F.2d 1244 (9th Cir.1989). The updated data on bighorn sightings is evidence of a "serious environmental consequence" that may be considered by the Court.

---

[1] This effectively counters the argument made by counsel for Shirts Brothers (at the oral argument) that because the reservoir lay between the bighorns and the allotment, travel to the allotment would be hampered or prevented. Coggins also notes that "[c]rossing the Snake River or Hells Canyon dam presents no barrier to bighorn movement, and such movements are well documented." *See Coggins' Third Declaration* at p, 3,

**Memorandum Decision and Order – Page 6**

Shirts Brothers argues, however, that the stay denial was arbitrary because Shirts had agreed to 13 restrictions on grazing that would have prevented any contacts between bighorns and the sheep. The Court cannot find, however, that Shirts Brothers is likely to prevail on this issue. In denying the stay, the Forest Service cited to evidence that those restrictions had not worked in the past. *See Exhibit 11 to Government Response Brief* at p. 3. Specifically, this past winter, two domestic sheep were left behind and wandered the allotment for about four months. *Id.* The Forest Service also relied on the well-established gregarious nature of – and attraction between – the bighorns and the domestic sheep. *Id.* These factors did not promote confidence in the 13 restrictions suggested by Shirts Brothers, and make it unlikely that the stay denial could be deemed arbitrary.

Shirts Brothers argues that they were entitled to more notice. This is a matter of concern for the Court. As recently as February 1, 2007, the Forest Service informed Shirts Brothers that no changes would be made to their permit. The Forest Service's Risk Analysis had been issued three months earlier, and so the basis for restrictions existed before February 1, 2007, and yet Shirts Brothers was assured that no changes would be made.

It was not until mid-May of 2007 that the restrictions at issue were imposed, giving Shirts Brothers only a month to change a course that requires a year to alter

**Memorandum Decision and Order – Page 7**

effectively.  That has placed Shirts Brothers in a real bind, forcing it to find alternative forage.

On the other hand, there is substantial evidence of a real emergency here. The bighorn die-offs are dramatic, and domestic sheep stand accused by the overwhelming majority of experts examining the die-offs.  The Smith Mountain allotment is prime habitat for bighorns, and field sightings have placed them there, or nearby, very recently.  Past attempts to separate bighorns from domestic sheep appear to have been unsuccessful, and there is a powerful natural attraction between the animals.  All of this warrants a new direction, a different approach by the Forest Service to more strictly limit grazing on that allotment.

The regulations allow an exception to the notice requirements for emergencies and for "management needs."  *See* 36 C.F.R. § 222.4(7) and (8). Those regulations would authorize the short notice in this case.

Shirts Brothers also asserts that the stay denial will result in substantial economic damage.  The Forest Service has located four alternative forage areas. Ronald Shirts claims that each of the four are insufficient for various reasons, but does not comment on why a combination of the alternatives would not work. While counsel alleged at oral argument that it was difficult logistically to separate the herds, it appears this could be done.  Ronald Shirts owns a partnership interest

**Memorandum Decision and Order – Page 8**

in the permit on one of the alternatives, and Frank Shirts Jr. has had experience grazing on another alternative for the last three years.  The point here is that the alternatives are not unknown areas to Shirts Brothers.  While the history indicates that each alone would not be enough, the Court is not convinced that some combination would be completely unworkable.

For all these reasons, the Court finds it unlikely that Shirts Brothers would prevail on setting aside the denial of the stay.  The motion for injunctive relief by Shirts Brothers will therefore be denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for TRO and/or preliminary injunction (Docket No. 2) is hereby DENIED.

DATED:  **June 13, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court