IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS ) <br> PROJECT, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES FOREST ) <br> SERVICE, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. CV-07-151-E-BLW <br><br> **MEMORANDUM DECISION** <br> **AND ORDER** |

## INTRODUCTION

The Court has before it an oral motion made by intervenors Shirts Brothers and Carlson Company to stay a decision of the Forest Service. The Court heard oral argument on November 8, 2007, and took the oral motion under advisement. The Court allowed further briefing on the jurisdictional issue, which has now been received. For the reasons expressed below, the Court will deny the motion.

## LITIGATION BACKGROUND

This suit was brought by WWP to enjoin sheep grazing on six allotments in the Hells Canyon and Salmon River areas. Intervenors Shirts Brothers and Carlson Company graze sheep on allotments in those areas under permits issued by the

**Memorandum Decision and Order – Page 1**

Forest Service. WWP alleged that disease transmission from domestic sheep to bighorn sheep, and the close proximity of bighorn herds to these six allotments, required grazing to be shutdown to keep these sheep species separate.

The Forest Service decided to close five of those allotments, leaving only the Allison-Berg allotment at issue. WWP decided to delay seeking relief on that allotment until the fall/winter grazing season, to see if circumstances would change.

The Forest Service then issued its Annual Operating Instruction for that allotment, authorizing sheep turn-out on November 15, 2007. That decision caused WWP to renew its motion for injunctive relief.

The Forest Service originally opposed WWP's motion, claiming that there was little chance of contact between domestic sheep and bighorns on the Allison-Berg Allotment. That changed, however, with filings by the Nez Perce Tribe on November 5, 2007. Those filings showed numerous sightings of bighorns in or near the Allison-Berg allotment.

Based on these filings, the Forest Service dropped its opposition and issued a Grazing Permit Modification prohibiting grazing of mature sheep or goats on Forest System lands within the Allison-Berg allotment from October 28, 2007, to March 1, 2008.

**Memorandum Decision and Order – Page 2**

That modification was issued on November 7, 2007, just a day before the hearing in this matter. WWP approves the Modification, so they are now aligned with the Forest Service. Intervenors Carlson Company and Shirts Brothers oppose the Modification, and moved orally during the Court's hearing to stay the decision of the Forest Service. In addition, immediately after the Court's hearing, Carlson Company filed an administrative appeal of the Forest Service decision and also filed a motion before the Forest Service seeking a stay of their Modification decision. *See Notice* (docket no. 99).

**1.     Jurisdiction**

The Forest Service argues that this Court lacks subject matter jurisdiction over Carlson Company's oral request for a stay of the Modification decision. The Forest Service bases its argument on a Department of Agriculture regulation, 7 C.F.R. § 6912(e) that requires exhaustion of all administrative appeal procedures "before the person may bring an action in a court of competent jurisdiction . . . ."

The Ninth Circuit, however, has found that this very regulation fails to contain the "sweeping and direct" language necessary to deprive federal courts of jurisdiction. *See McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002). Given that the exhaustion requirement is not jurisdictional, the Court must next consider whether it should be excused. *Id*.

**Memorandum Decision and Order – Page 3**

The urgency of this dispute warrants excusing the exhaustion requirement. Sheep will be turned-out on November 15, 2007, just a week after the hearing, and only a few days from this decision. There is a federal holiday (and a weekend) during that period. Accordingly, there are only three working days between the Court's hearing and the turn-out. It will be nearly impossible for Intervenors to obtain a Forest Service decision on their stay application, appeal that decision here, and get a decision from this Court on the appeal within that three-day period. Given these tight time frames, the Court finds that the exhaustion requirement of § 6912(e) should be excused, and the matter resolved here.

**2.    Intervenors' Motion for Stay**

In support of their challenge to the Forest Service ban, the Intervenors point to the declaration of their expert Dr. Glen Weiser. He appears to be an expert in the study of bighorn pneumonia. His paper on the subject is due to be published in a peer-reviewed journal in December of 2007. He concludes that "there is no hard, conclusive science in existence that proves whether or not domestic sheep transmit deadly diseases to bighorn sheep under range conditions." He observes that at times bighorns die of pneumonia without any contact with domestic sheep. He also observes that the bacteria is widespread and that testing has shown that it is present in many bighorn herds already, and is also carried by deer, elk, and birds.

**Memorandum Decision and Order – Page 4**

In particular he concludes that a specific die-off of bighorns in the mid-1990s, previously thought to be due to the transmission of disease from sheep was in fact caused by something else.

The Intervenors have also submitted photographs of bighorns with birds perched on their noses, to support their claims of disease transmission by species other than domestic sheep.  In addition, Guy Carlson of Carlson Company filed his Declaration stating that in his 50 years of grazing sheep on the Allison-Berg allotment, he has never seen or heard of a dead bighorn on the allotment.  Furthermore, he calculates that he will need to spend an extra $75,600 for replacement forage if the allotment is closed.

In response, the Forest Service and WWP point to – among other things – a report issued by the Western Association of Fish and Wildlife Agencies ("WAFWA"), which consists of 23 wildlife agencies from the western U.S. and Canada.  The Report acknowledged that there is not conclusive proof about disease transmission.  However, it concluded that "there is a preponderance of evidence, taken collectively from a wide variety of observations that indicates significant risk of disease transmission from domestic sheep and goats to wild sheep exists."

WWP also points to the Forest Service Science Panel Report.  It also

**Memorandum Decision and Order – Page 5**

acknowledged that while conclusive proof is not available, field studies contain evidence that contact between domestic sheep and bighorns "increases risk of subsequent bighorn sheep mortality and reduced recruitment, primarily due to respiratory disease."

The reports from WAFWA and the Forest Service Science Panel are not at odds with Dr. Weiser's report – indeed, Dr. Weiser was a member of the Science Panel. Read together, these reports acknowledge the lack of conclusive proof, but warn that the preponderance of evidence suggests that domestic sheep transmit a deadly respiratory disease to bighorns.

It is true that Dr. Weiser concludes that a bighorn die-off in the mid-1990s lends no support to the theory of domestic sheep transmission, as previously believed. However, even Dr. Weiser does not conclude that his findings destroy the premise of the WAFWA and Science Panel findings, which were not based entirely on the mid-1990s die-off incident.

Indeed, the Intervenors do not mount a direct challenge to those reports, but point instead to the lack of any specific evidence that the general findings of those reports apply here. The Intervenors' argue that there is no evidence that (1) the domestic sheep grazed on the Allison-Berg allotment harbor any respiratory disease organisms, and (2) the bighorns herds in the area are not already infected

with these organisms.

The Intervenors' make their challenge under the Administrative Procedures Act (APA). Under the APA, the issue is whether this lack of specific evidence renders the Modification decision "arbitrary and capricious." 5 U.S.C. § 706.

To be entitled to a stay, the Intervenors must demonstrate that they are likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor. *See Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 913 (9th Cir. 1995). The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases. *Id.* "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985).

The balance of hardships tips decidedly in favor of the Forest Service. The risk of allowing grazing is the die-off of bighorns. Indeed, the bighorns sighted near the Allison-Berg allotment are a native species, and thus the loss of that herd would be particularly devastating to the genetic diversity of bighorns. Arrayed against that substantial hardship is the financial loss of about $76,000 that the Intervenors will suffer if grazing is banned. While this loss is substantial, there is

**Memorandum Decision and Order – Page 7**

no evidence that it imperils the continued operation of Intervenors' businesses.

Under these circumstances, the balance of hardships tips decidedly in the Forest Service's favor. Consequently, the Intervenors must do more than merely raise serious questions, but must meet the stiffest standard and show that they are likely to prevail on their claim that the Forest Service acted arbitrarily. They cannot meet this standard.

The Forest Service relied on the Science Panel report. That report observed the dramatic drop in bighorn numbers and concluded that it was primarily due to disease outbreaks. The panelists reviewed an extensive body of literature and concluded that "bighorn die-offs typically follow known or suspected contact with domestic sheep." *Science Panel Report* at p. 3. They also noted that clinically healthy bighorns developed pneumonia and died within days or weeks following contact with clinically healthy domestic sheep. *Id.* The panelists explained that the domestic sheep appear to have developed resistance to the pneumonia while the bighorns, closely related to the domestic sheep, have not developed the same resistence. *Id*. The WAFWA report reaches much the same conclusions.

Given the precarious nature of the bighorn populations, and the wide-spread agreement among experts that sheep might transmit a deadly disease to bighorns, a substantial risk exists even without the specific proof demanded by the Intervenors.

**Memorandum Decision and Order – Page 8**

When bighorn movements surprise agency officials – a not uncommon occurrence – a quick decision is necessary if domestic sheep are nearby.  To require the Forest Service to do extensive testing to rule-out operation of the Science Panel's general theory in each specific case would be to hamstring the agency when it most needs to be nimble.

These circumstances all counsel caution.  A cautious approach is particularly appropriate here because the bighorns sighted near the Allison-Berg allotment are a native species.  The loss of this herd would create an irreparable injury to the genetic diversity of bighorns.

Because the balance of hardships tips decidedly toward the Forest Service, the Intervenors must raise more than serious questions – they must show a likelihood of success.  They have not carried that burden and hence their oral motion for a stay will be denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the oral motion to stay the Forest Service's Modification of Grazing Permit #1 (November 7, 2007) made by Intervenors is DENIED.

IT IS FURTHER ORDERED THAT the Motion for Preliminary Injunction (Docket No. 71) is hereby ordered moot.



DATED: **November 13, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge